IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00223-REB-MJW

RUSSELL M. BOLES,

Plaintiff,

v.

DEVIN NEWTH,
CHRISTIANS,
PECK, M.,
ABNEY,
LONG, J.
HUMPHREY, C.L., and
KEVIN MILYARD,

Defendants.

---

**RECOMMENDATION ON
DEFENDANTS' COMBINED MOTION TO DISMISS AND
MEMORANDUM BRIEF IN SUPPORT OF MOTION TO DISMISS
(Docket No. 21)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case was referred to the undersigned pursuant to an Order of Reference to

Magistrate Judge issued by District Judge Robert E. Blackburn on April 21, 2009.

(Docket No. 12).

On March 24, 2009, the pro se incarcerated plaintiff filed an Amended Complaint

(Docket No. 9), and three of his four claims contained in that pleading remain.[1] In his

first claim, asserted against defendants Newth, Peck, Abney, and Milyard, plaintiff

---

[1] Plaintiff's fourth claim for relief was dismissed without prejudice by Senior Judge Zita L. Weinshienk on April 17, 2009. (Docket No. 10).

alleges he was forced to forego necessary eye surgery because those defendants refused to allow him to take his breathing machines. His second claim has four subparts. He contends that in retaliation for initiating this lawsuit, his access to the courts has been violated because (1) defendants Newth, Peck, Abney, and Long damaged and confiscated his property, including legal materials, (2) defendant Humphrey is refusing to process or file his grievances and has requested that plaintiff be denied library time, (3) defendants Humphrey and Christians destroyed his property intended to be mailed from the prison, and (4) defendant Long attempted to stop him from attending a scheduled telephone conference in one of his court cases. In his third claim, plaintiff alleges defendants Newth, Peck, Abney, and Christians confiscated and destroyed his personal property.

Now before the court for a report and recommendation is the Defendants' Combined Motion to Dismiss and Memorandum Brief in Support of Motion to Dismiss. (Docket No. 21). Defendants raise the following arguments in their motion: (1) to the extent they are sued in their official capacities for damages, they are immune from liability; (2) plaintiff's claims against defendant Milyard fail for lack of personal participation, and (3) plaintiff's Complaint fails to state a claim under any theory. Plaintiff filed a Response (Docket No. 31), which he supplemented (Docket No. 34), and defendants filed a Reply (Docket No. 33) and a response to plaintiff's motion to supplement (Docket No. 37). Plaintiff then filed a rebuttal. (Docket No. 38). The court has carefully considered all of these motion papers as well as applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court's file. The court now being fully informed makes the following findings,

3

conclusions, and recommendation that the defendants' motion to dismiss be granted in part and denied in part.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the Complaint as true and resolve all reasonable inferences in plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the Complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp.).

Since the plaintiff is not an attorney, his pleading has been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

**Official Capacity Claims**

Defendants first correctly assert that to the extent they are sued in their official capacities for damages, they are immune from liability. "[T]he Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994).

Plaintiff states in his response that all of the defendants are being sued in their individual capacities for damages and that some of them are also being sued in their official capacities for declaratory and injunctive relief. While "[t]he Eleventh Amendment does not generally bar actions for prospective injunctive relief where state officials have violated federal law," Montez v. Romer, 32 F. Supp.2d 1235, 1241 (D. Colo. 1999), "[a]bsent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit . . . for retroactive declaratory relief." Loyd v.

Prendergast, 2009 WL 2514179, *5 (D. Colo. Aug. 14, 2009) (citing Atascadera State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985)).  See Dauwe v. Miller, 2009 WL 1767152 (D. Colo. June 22, 2009) ("[T]he Eleventh Amendment does not permit judgments against state officers declaring that they violated federal law in the past.").  Therefore, it is recommended that the plaintiff's claim for injunctive relief against the defendants in their official capacity not be dismissed on this ground, but to the extent in his Amended Complaint plaintiff makes a claim for damages and retroactive declaratory relief against the defendants in their official capacity, that such claims be dismissed with prejudice.

**Personal Participation**

Defendants next assert that the plaintiff has not alleged personal participation on behalf of Warden Milyard, noting that the only allegations against Milyard are that he "failed to put adequately trained and supervised people in the positions [the other Defendants] occupied" and that he "refused to provide adequate training and supervision for the other Defendants."  (Docket No. 21 at 4) (citing Docket No. 9 at 6, 7).

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009).  As the Tenth Circuit has stated:

> Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates.  "[T]here is no concept of strict supervisor liability under § 1983." . . .  "This does not mean that a

>supervisor may not be liable for injuries caused by the conduct of one of his subordinates. It does mean that his liability is not vicarious, that is, without fault on his part." . . . .
>
>Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . . In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .
>
>In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution. Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . . In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior. Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006)

(citations omitted).

Reading the Amended Prisoner Complaint liberally and in the light most favorable to the plaintiff, this court finds that the plaintiff has not alleged the requisite affirmative link between Warden Milyard's conduct and the alleged constitutional violations. Even if it were contained in his pleading, plaintiff's allegation in his response that he sent the Warden correspondence is not sufficient to establish personal participation in a constitutional violation. "To hold a supervisory prison official liable on the basis of communications he received, 'would be to hold any well informed [prison official] personally liable for damages flowing from any constitutional violation occurring at any

jail within that [official's] jurisdiction. We believe that such a broad theory of liability is inconsistent with the personal responsibility requirement for . . . a section 1983 action.'" Walker v. Meyer, Civil Action No. 08-cv-01911-REB-KLM, 2009 WL 961490, *4 (quoting Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982)).

Therefore, this court finds that the Amended Prisoner Complaint lacks allegations sufficient to establish Milyard's supervisory liability, and it is thus recommended that the Amended Prisoner Complaint be dismissed as against defendant Milyard.

**Claim One: Denial of Prescribed Medical Treatment**

In his first claim, plaintiff alleges that defendants Newth, Peck, and Abney forced him to forego necessary prescribed eye surgery on December 18, 2008, by not allowing him to take his breathing machines, i.e., a BiPAP and 02 concentrator, without which sleep apnea causes him to stop breathing in his sleep. Defendant Peck also allegedly forced plaintiff to sign a paper saying he would not be having the surgery. Defendants now assert that this claim fails as a matter of law because plaintiff fails to allege any injury resulting from the delay in eye surgery.

"[P]risoners have an Eighth Amendment right to adequate medical care . . . ." Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001). "In keeping with the principle that government officials are generally afforded wide latitude when fulfilling their discretionary functions, . . . however, in cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately indifferent to the serious medical needs of prisoners in their custody.'" Id. "[A] delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can

8

show the delay resulted in substantial harm." <u>Mata v. Saiz</u>, 427 F.3d 745, 751 (10th Cir. 2005) (quotations omitted). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." <u>Id.</u> (quotations omitted). Here, plaintiff has not alleged that any harm, let alone substantial harm, resulted from the delay in his surgery. Therefore, this court recommends dismissal of Claim One for failure to state a claim upon which relief can be granted.

**<u>Claim Two: Interference With and Denial of Access to the Courts</u>**

Defendants assert that the plaintiff's second claim for relief fails as a matter of law. They correctly note that Claim Two contains multiple parts. Each part will be addressed below.

Plaintiff alleges that defendants Newth, Peck, and Abney took legal materials from his property and refused to give it back, that defendant Long <u>attempted</u> to stop plaintiff from attending a scheduled telephone court conference in another case on March 2, 2009, and that defendant Humphrey <u>requested</u> that plaintiff be denied library time. It is well established, however, that "a prisoner claiming a denial of access to the courts must allege some actual injury in his ability to pursue a nonfrivolous legal claim." <u>Creighton v. Denuzi</u>, 2009 WL 3122950 (D. Colo. Sept. 24, 2009) (citing <u>Penrod v. Zavaras</u>, 94 F.3d 1399, 1430 (10th Cir. 1996); <u>Lewis v. Casey</u>, 518 U.S. 343, 349 (1996)). <u>See</u> <u>Perterson v. Shanks</u>, 149 F.3d 1140, 1145 (10th cir. 1998) ("To present a viable claim for denial of access to the courts . . . an inmate must allege and prove prejudice arising from the defendants' actions."). Furthermore, "the right of access to the courts extends only as far as protecting an inmate's ability to prepare an initial pleading in a civil rights action regarding his or her current confinement or in an

application for a writ of habeas corpus." <u>Fogle v. Bonner</u>, 2009 WL 1765643 (D. Colo. June 22, 2009).  Here, defendants correctly assert that the Amended Complaint does not contain any allegation of facts which, if proven, would show that the taking of particular legal materials deprived plaintiff of the ability to file a pleading with any court, caused him to miss a court-imposed deadline, or caused a case to be dismissed.  Plaintiff merely vaguely alleges that he had to ask for enlargements of time, which caused delay, and that some unspecified evidence is missing and may affect the outcome of some unspecified cases and may mean one unidentified case does not get filed.  (Docket No. 9 at 7).  As noted above, in order survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  <u>Bell Atlantic Corp.</u>, 550 U.S. at 555 (citations omitted).  Plaintiff has not done so here.

In addition, with respect to defendant Long, plaintiff claims Long merely attempted to stop him from attending a court hearing; plaintiff does not allege he was actually prevented from attending.  Also, with respect to defendant Humphrey, plaintiff claims that Humphrey merely requested that plaintiff be denied library time; plaintiff does not allege that he was actually denied library time.  In any event, "the constitutional obligation to provide inmates access to courts does not require states to give inmates unlimited access to a law library . . . ."  <u>Penrod v. Zavaras</u>, 94 F.3d 1399, 1403 (10th Cir. 1996).  Therefore, even if Humphrey caused plaintiff to miss one visit to the law library, without alleging any actual prejudice, plaintiff does not state a claim of constitutional dimension.

In sum, this court finds that given plaintiff's failure to allege any actual prejudice

10

as a result of defendants' actions, his claim of interference with and denial of access to the courts should be dismissed.

Plaintiff also contends in Claim Two that defendant Humphrey "deliberately fumbled grievance processing" and that starting in May 2008, defendant Humphrey has refused to process grievances for plaintiff. Defendants assert that plaintiff's access to the grievance procedure was appropriately restricted due to his abuse of the grievance procedure. Defendants contend that here there is a legitimate penological interest in limiting access to the grievance system for those inmates who choose to abuse the system by filing excessive grievances. They assert that limiting access prevents excessive and frivolous grievances, prevents harassment of CDOC employees and officials, and provides for an efficient system that affords all inmates the ability to file legitimate grievances. According to the defendants, failure to limit excessive grievances when an inmate abuses the system will limit access for other inmates and will be an inefficient use of CDOC staff and resources. In addition, they contend that limiting access does not limit an inmate's access to the court system. Defendants thus assert that the four-pronged test of Turner v. Safley, 482 U.S. 78 (1987), is satisfied here, and thus plaintiff's First Amendment claim with respect to the grievance restriction should be dismissed.[2] These arguments, however, are not proper at this stage of the

---

[2] Under Turner, a regulation or policy that impinges on an inmate's constitutional rights, including the right to access to the courts, is valid if it is "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. at 89. In making such a determination, the court is guided by the following four factors. Id. at 89-90, Jones v. Salt Lake County, 503 F.3d 1147, 1153 (10th Cir. 2007). "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." Turner, 482 U.S. at 89. "A regulation restricting an inmate's First Amendment rights must operate without regard to the content of the

11

proceedings, when the court is merely considering a Rule 12(b)(6) motion and determining whether the plaintiff has stated a claim upon which relief can be granted. Furthermore, defendants' argument relies on several unsupported, conclusory factual assertions. See Mitchell v. Wiley, 2007 WL 2890095 (D. Colo. Sept. 26, 2007). Interpreting plaintiff's allegations in the Amended Complaint liberally and assuming them to be true, as this court must do, it is conceivable that the plaintiff could prove facts entitling him to relief on this claim. Therefore, defendants' motion to dismiss should be denied with respect to this claim concerning defendant Humphrey.

Plaintiff, however, has failed to state a claim of constitutional dimension based on his allegation that defendant "Long, with physical gesture and vocal statements, threatened me with possible physical harm and definite confiscation of my legal material." (Docket No. 9 at 7). "[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment." McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001). See Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) ("Verbal harassment or abuse of the sort alleged in this case [i.e., sheriff threatened to hang prisoner following prisoner's request to mail some legal correspondent] is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983."); Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992)

---

expression." Jones, 503 F.3d at 1152. Second, the court considers "whether there are alternative means of exercising the right that remain open to prison inmates." Turner, 482 U.S. at 90. Third, the court "examine[s] the impact accommodation of the asserted constitutional right would have on guards, other inmates, and prison resources." Jones, 503 F.3d at 1152. "Finally, [the court] determine[s] whether obvious, easy alternatives exist that fully accommodate inmates' rights at *de minimis* cost to valid penological interests. If so, the regulation may not be reasonable but an 'exaggerated response' to prison concerns." Id.

(noting that among the actions "necessarily excluded from the cruel and unusual punishment inquiry" are "verbal threats and harassment"); Borrego v. Mathews, 2009 WL 812158, *1 (D. Colo. Mar. 26, 2009) (mere verbal threats and harassment alleged by Plaintiff are not sufficient to state an Eighth Amendment claim); Teague v. Hood, 2008 WL 2228905, at *13 (D. Colo. May 27, 2008) ("verbal harassment, threats, or taunts do not rise to the level of . . . an Eighth Amendment violation") (and cases cited therein). Therefore, plaintiff's claim against defendant Long should be dismissed.

**Claim Three: Wrongful Confiscation and Destruction of Personal Property**

In Claim Three, plaintiff asserts that defendant Newth, Peck, Abney, and Christians damaged, destroyed, or took some of his property. He claims there was a holiday variance in effect concerning the amount of property an inmate could possess which allowed him to possess the property he had, but some of his property was nevertheless confiscated by these defendants, and he was not allowed to mail out the property even though he offered postage stamps to cover the parcel post shipping he requested.

Defendants assert that plaintiff has failed to state a claim upon which relief can be granted. This court agrees. A section 1983 action may be brought with regard to such claims if the deprivation is caused by an intentional act done in accordance with established policy or procedure, in which case due process requires predeprivation notice and an opportunity to be heard, unless circumstances require immediate action. See Gillihan v. Shillinger, 872 F.2d 935, 939 (10th Cir. 1989) ("Hudson [v. Palmer] deal[s] with random and unauthorized deprivations of property rather than deprivations according to some established state policy, procedure, or custom."). Plaintiff here,

Case 1:09-cv-00223-REB-MJW   Document 39   Filed 11/13/09   USDC Colorado   Page 13 of 17

13

however, appears to contend that the defendants were not following established policy or procedure or that their actions were otherwise unauthorized because he contends there was a "holiday variance" in effect at the time that allowed him to possess the quantity of property at issue, yet the defendants nevertheless confiscated some of the property as being excessive. It is well settled that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." Hudson v. Palmer, 468 U.S. 517, 533 (1984). As noted by the defendants, plaintiff had a remedy available in state court. See §§ 24-10-104 and 24-10-118, C.R.S. Furthermore, "[t]he Supreme Court has indicated that adequate inmate grievance procedures alone may provide a meaningful postdeprivation remedy for purposes of procedural due process." Rosales v. Ortiz, 2008 WL 877173, *9 (D. Colo. Mar. 27, 2008) (citing Hudson, 468 U.S. at 536 n.15). Such grievance procedures are available within the Colorado Department of Corrections. See Administrative Regulation Number 850-04. Therefore, plaintiff's claim fails because adequate postdeprivation remedies existed to redress the alleged intentional deprivation of his property.

**Retaliation Claims**

In the "Nature of the Case" section of the Amended Complaint, plaintiff states in a conclusory fashion that "defendants are retaliating against Boles for filing this action." (Docket No. 9 at 5). Plaintiff makes no mention of retaliation in Claim One (denial of

14

prescribed medical treatment). In Claim Two (interference with and denial of access to the courts), plaintiff claims that on December 18, 2008, from 9 a.m. to 11 a.m., defendants Newth, Peck, and Abney ransacked and damaged his belongings, including legal material, and that "[t]his is an act done in retaliation for my statement that I would have to sue them for depriving me of my eye surgery." (Docket No. 9 at 7). He also asserts in Claim Two that "[i]n retaliation to this action, [Humphrey] is now refusing to file any grievances for me" and that "Defendant Long retaliated against me for filing this action by attempting to stop me from attending a scheduled telephone court conference in another case, March 2, '09." (Docket No. 9 at 7). Finally, in Claim Three, plaintiff asserts that in March 2009, defendants Christians and Humphrey retaliated against him for filing this action by refusing to mail out confiscated property and reportedly destroying that property. (Docket No. 9 at 8).

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . . However, an inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." Fogle v. Pierson, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). "This principle applies even where the action taken in retaliation would be otherwise permissible." Smith v. Maschner, 899 F.2d 940, 948 (10th Cir. 1990). "To state a claim for retaliation in a First Amendment context, a plaintiff must plead facts indicating that he can plausibly prove three elements at trial: (1) he engaged in constitutionally protected activity; (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the defendants' actions were substantially motivated by

the plaintiff's protected activity." Magluta v. U.S. Federal Bureau of Prisons, 2009 WL 1504749, *3 (D. Colo. May 28, 2009). With regard to the third element, "[a] plaintiff must allege facts to show that retaliation was the animus behind the defendants' actions, *i.e.,* a plaintiff must show that 'but for' a desire to retaliate, the defendants would not have acted as they did." Id.

Here, this court finds that plaintiff has, at least at this early stage, stated a retaliation claim with respect to defendants Newth, Peck, and Abney allegedly ransacking and damaging his belongings, including legal material, in retaliation for him allegedly telling them that morning that he would have to sue them for depriving him of his eye surgery. (Docket No. 9 at 7). Plaintiff has pled facts indicating that he can plausibly prove the three elements outlined above with respect to that alleged act of retaliation by defendants Newth, Peck, and Abney. With respect to plaintiff's other retaliation claims, however, this court finds that he had not pled sufficient facts to meet the plausibility standard. See Magluta v. U.S. Federal Bureau of Prisons, 2009 WL 1504749, *3 (D. Colo. May 28, 2009) ("To establish a *plausible* claim for retaliation, Plaintiff needs to do more than simply state that he filed administrative grievances, was subsequently transferred and hope this court will fill in the rest of the story."). This action was commenced in January 2009, but in his Amended Complaint, he merely makes conclusory claims that "defendants are retaliating against Boles [him] for filing this action" (Docket No. 9 at 5), "[i]n retaliation to this action, [Humphrey] is now refusing to file any grievances for me. . . ." (Docket No. 9 at 7), that "Defendant Long retaliated against me for filing this action by attempting to stop me from attending a scheduled telephone court conference in another case, March 2, '09." (Docket No. 9 at 7), and

16

that in March 2009, defendants Christians and Humphrey retaliated against him for filing this action by refusing to mail out confiscated property and reportedly destroying that property (Docket No. 9 at 8).  It is recommended that such conclusory retaliation claims be dismissed as plaintiff has not plead enough facts to state a claim to relief that is plausible on its face.

**RLUIPA and First Amendment Free Exercise Claims**

In Claim Three (wrongful confiscation and destruction of personal property), plaintiff also states that he saw defendant Abney damage one of his religious objects, that religious books were discovered to be damaged, and that after some of plaintiff's personal property was confiscated, defendants did not give him back his property except two religious items.  Plaintiff subsequently alleges at the end of Claim Three a "First Amendment [violation] for religious discrimination as well as 42 USC 2000cc [the Religious Land Use and Institutionalized Persons Act ('RLUIPA')]."  (Docket No. 9 at 8). "Both the Free Exercise Clause and RLUIPA require and initial showing by Plaintiff that Defendants have placed a substantial burden on his ability to practice his religion. . . . A substantial burden is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs."  Worthen v. Oklahoma Dept. of Corrections, 2009 WL 88555 (W.D. Okla. Jan. 12, 2009) (citations and quotations omitted).  Here, plaintiff does not allege in his Amended Complaint that the damage to his religious articles imposed a substantial burden on his religious exercise or inhibited him from practicing his religion in any meaningful way.  Therefore, this court finds that the plaintiff's allegations fail to state a claim under the First Amendment and RLUIPA.

**WHEREFORE,** for the foregoing reasons it is hereby

17

**RECOMMENDED** that Defendants' Motion to Dismiss (Docket No. 21) be **granted in part and denied in part**.  More specifically, it is recommended that plaintiff's request for monetary relief against defendants in their official capacities and for declaratory relief be denied and that all of the plaintiff's claims be dismissed except for two portions of Claim Two, namely, (1) plaintiff's claim that defendants Newth, Peck, and Abney ransacked and damaged his belongings, including legal material, in retaliation for plaintiff's statement that he would have to sue them for depriving him of his eye surgery, and (2) plaintiff's claim that defendant Humphrey deliberately fumbled grievance processing and starting in May 2008 has refused to process grievances for plaintiff.  As a result, defendants Christians, Long, and Milyard would no longer be defendants in this action.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  November 13, 2009                    s/ Michael J. Watanabe
       Denver, Colorado                     Michael J. Watanabe
                                            United States Magistrate Judge