IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00223-REB-MJW

RUSSELL M.  BOLES,

Plaintiff,

v.

DEVIN NEWTH,
PECK, M.,
ABNEY, and
HUMPHREY, C.L.,

Defendants.

---

**AMENDED**[1]
**RECOMMENDATION ON**
**PLAINTIFF'S MOTION FOR COURT TO REVISIT THE COMPLAINT (Docket No. 82),**
**PLAINTIFF'S MOTION FOR DEFENDANTS TO BE HELD PERSONALLY**
**ACCOUNTABLE FOR JUDGMENT WHEN IT IS RENDERED IN THE PLAINTIFF'S**
**FAVOR (Docket No. 83), and**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 85)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


This case was referred to the undersigned pursuant to an Order of Reference to

Magistrate Judge issued by District Judge Robert E. Blackburn on April 21, 2009.

(Docket No. 12).

---

[1]This court's previous report and recommendation issued on September 30, 2011 (Docket No. 94), is amended as follows.  The second recommended paragraph, which is located on page 15 of the original report and recommendation, is amended to correct a typographical error to now state it is recommended that the Defendants' Motion for Summary Judgment (Docket No. 85) be granted, rather than denied, as erroneously typed in the original.

2

On March 24, 2009, the pro se plaintiff, who was then incarcerated, filed an

Amended Complaint (Docket No. 9), but only two claims remain,[2] namely, that his

access to the courts was violated because defendant Humphrey refused to process or

file his grievances and that defendants Newth, Peck, and Abney retaliated against him

by damaging certain of his belonging, including legal materials.

Now before the court are the following three motions: (1) plaintiff's Motion for

Court to Revisit the Complaint (Docket No. 82), (2) plaintiff's Motion for Defendants to

be Held Personally Accountable for Judgment When It is Rendered in the Plaintiff's

Favor (Docket No. 83), and (3) Defendants' Motion for Summary Judgment (Docket No.

85).  With regard to the first motion, defendants filed a response (Docket No. 88), and

plaintiff filed a reply (Docket No. 89).  No response was filed with respect to the second

motion.  Plaintiff filed a response to the summary judgment motion (Docket No. 87), and

defendants filed a reply (Docket No. 90).  The court has carefully considered all of these

motion papers as well as applicable Federal Rules of Civil Procedure and case law.  In

addition, the court has taken judicial notice of the court's file.  The court now being fully

---

[2]Plaintiff's fourth claim for relief was dismissed without prejudice by Senior Judge Zita L. Weinshienk on April 17, 2009.  (Docket No. 10).  In addition, in an Order Overruling Objections and Adopting Recommendation of the United States Magistrate Judge issued on March 17, 2010 (Docket No. 47), Judge Blackburn dismissed the following claims without prejudice for failure to state claims on which relief may be granted: (a)  All claims for monetary and declaratory relief against all defendants in their official capacities; (b)  all claims against defendant Kevin Milyard; (c)  Claim One, alleging denial of medical treatment, and Claim Three, alleging wrongful confiscation and destruction of property, in their entirety; (d)  Claim Two, alleging denial of access to the courts, except insofar as plaintiff has alleged that defendant Humphrey has denied plaintiff access to prison grievance procedures; (e) plaintiff's claims for retaliation as against defendants Long, Humphrey, and Christians; and (f) plaintiff's claim that defendant Abney violated his rights under the First Amendment and/or the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc.

informed makes the following findings, conclusions, and recommendations.

Since the plaintiff is not an attorney, his pleading has been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  Id.

## MOTION TO REVISIT THE COMPLAINT

Plaintiff asks the court to "revisit the complaint in light of more recent revelations." (Docket No. 82 at 6).  He asserts that ""[c]ircumstances have changed as to claims and damages." (Docket No. 82 at 1).  More specifically, he notes that he is no longer incarcerated and that his eye surgery will be done by a certain doctor with necessary follow-up care.  In addition, he details alleged monetary damages, including the purported cost of his surgery, medication, and destroyed or damaged property.  Plaintiff also once again describes alleged difficulties he had accessing the prison law library and filing grievances, which he asserts "deliberately undermined an alleviated any chance of post deprivation remedy," and claims he gave sufficient stamps to have his property mailed out of the facility and was harassed and threatened regarding his accumulation of legal papers.  Plaintiff also claims the warden was responsible because plaintiff's claims

were not isolated instances of constitutional violations of his rights at that facility and that "[w]ith violations in every area and every level of the facility, the warden must of necessity be the primary responsible party." (Docket No. 82 at 5).

In addition, plaintiff "[c]laims the court previously dismissed for not being adequately plead would be adequately plead under current case law." (Docket No. 82 at 1). In particular, he claims that the cases of Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), "were not considered before the ruling and would likely influence a different ruling." (Docket No. 82). Plaintiff asserts:

> Additionally, fundamental reasoning supports the claims as plead (how-ever artfully lacking). The defendants did not have authority to deprive or even delay eye surgery under the circumstances. Taking of property in connection with access to the courts is damage to a right that cannot be reconciled by post deprivation remedies. Taking and destroying an opponent's legal work product by defendants is impermissible even by prison officers. If there is too much to have in a cell suitable arrangements must be made for storage.

(Docket No. 82 at 5).

"The Federal Rules of Civil Procedure recognize no motion for reconsideration." Hawkins v. Evans, 64 F.3d 543, 546 (10th Cir. 1995) (quotation and internal quotation marks omitted). "The court's treatment of the motion for reconsideration depends on whether the order is a final order that disposes of all claims and all parties or is an interlocutory order." Gagliardi v. Duran, 2009 WL 5220679, *1 (D. Colo. Dec. 31, 2009). "[A]ny order . . . however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is an interlocutory order which is subject to revision at any time before the entry of judgment adjudicating all the claims and the

5

rights and liabilities of all the parties." Id. (quotations omitted).  "Notwithstanding the

district court's broad discretion to alter its interlocutory orders, the motion to reconsider

is not at the disposal of parties who want to rehash old arguments." National Bus.

Brokers, Ltd. v. Jim Williamson Productions, Inc., 115 F. Supp.2d 1250, 1256 (D. Colo.

2000) (quotations omitted).  "Rather, as a practical matter, [t]o succeed in a motion to

reconsider, a party must set forth facts or law of a strongly convincing nature to induce

the court to reverse its prior decision." Id. (quotation omitted).  "A motion to reconsider .

. . should be denied unless it clearly demonstrates manifest error of law or fact or

presents newly discovered evidence." Id.

Here, plaintiff's motion for reconsideration does not set forth any manifest error of

law or fact nor does it present newly-discovered evidence (other than the fact of his

release and the alleged amount of monetary damages).  There is no compelling reason

to reconsider this court's previous rulings.  In addition, the court would note that it did

indeed consider the Iqbal and Bell Atlantic cases when rendering its report and

recommendation in this case, and those cases were actually cited in that decision.

See Docket No. 39 at 3, 5.  It is thus recommended that the plaintiff's motion be

denied.

## MOTION FOR SUMMARY JUDGMENT

The four remaining defendants, Newth, Peck, Abney, and Humphrey, move

for summary judgment pursuant to Fed. R. Civ. P. 56 on the following grounds:

(1) plaintiff's claims for injunctive and injunctive relief are moot given plaintiff's

release from prison; (2) plaintiff's claims for compensatory damages fail because

he has not alleged any physical injury with respect to his remaining claims; (3) his

6

retaliation claim fails; (4) plaintiff's denial of access to the court claim fails; (5)

plaintiff has no evidence warranting a punitive damage award; and (6) defendants

are entitled to qualified immunity.

Rule 56(a) provides that summary judgment shall be granted "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party seeking summary

judgment bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of the pleadings, depositions, interrogatories, and

admissions on file together with affidavits, if any, which it believes demonstrate the

absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the

County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494

(10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the

opposing party may not rest on the allegations contained in the complaint, but must

respond with specific facts showing the existence of a genuine factual issue to be tried. .

. . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule

56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria,

149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

However, "[i]n order to survive summary judgment, the content of the evidence that the

nonmoving party points to must be admissible. . . . The nonmoving party does not have

to produce evidence in a form that would be admissible at trial, but '"the content or

substance of the evidence must be admissible."' . . . Hearsay testimony that would be

inadmissible at trial cannot be used to defeat a motion for summary judgment because

'a third party's description of a witness' supposed testimony is "not suitable grist for the summary judgment mill."'" <u>Adams v. American Guarantee & Liability Ins. Co.</u>, 233 F.3d 1242, 1246 (10th Cir. 2000).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." <u>Southway</u>, 149 F. Supp.2d at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." <u>Id.</u>; <u>Robertson</u>, 78 F. Supp.2d at 1146 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); quoting <u>White v. York Int'l Corp.</u>, 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." <u>Southway</u>, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." <u>Id.</u> at 1273.

**Mootness of Declaratory and Injunctive Relief.** Defendants correctly assert that the plaintiff's release from prison renders his claims for declaratory and injunctive relief moot. <u>Wirsching v. Colorado</u>, 360 F.3d 1191, 1196 (10th Cir. 2004).

**Physical Injury Requirement.** Defendants further correctly assert that the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(e), prevents plaintiff

8

from advancing any claims for compensatory damages because he has not alleged, let

alone shown, any physical injury as a result of any of the claims remaining in this case.

See Searles v. Van Bebber, 251 F.3d 869 (10th Cir. 2001).  This provision of the PLRA,

however, does not foreclose a prisoner's claim for nominal or punitive damages for the

alleged First Amendment violations.  Id.; McDaniels v. McKinna, 96 Fed. Appx. 575, 581

(10th Cir. Apr. 27, 2004).

     **Retaliation Claim.**   Plaintiff claims that on December 18, 2008, from 9 a.m. to

11 a.m., defendants Newth, Peck, and Abney ransacked and damaged his belongings,

including legal material, and that "[t]his is an act done in retaliation for my statement that

I would have to sue them for depriving me of my eye surgery."  (Docket No. 9 at 7).

"Prison officials may not retaliate against or harass an inmate because of the inmate's

exercise of his constitutional rights . . . .   However, an inmate claiming retaliation must

allege *specific facts* showing retaliation because of the exercise of the prisoner's

constitutional rights."  Fogle v. Pierson, 435 F.3d 1252, 1263-64 (10th Cir. 2006)

(quotations and citations omitted).  "This principle applies even where the action taken

in retaliation would be otherwise permissible."  Smith v. Maschner, 899 F.2d 940, 948

(10th Cir. 1990).  "To state a claim for retaliation in a First Amendment context, a plaintiff

must plead facts indicating that he can plausibly prove three elements at trial: (1) he

engaged in constitutionally protected activity; (2) the defendants' actions caused him to

suffer an injury that would chill a person of ordinary firmness from continuing to engage

in the protected activity; and (3) the defendants' actions were substantially motivated by

the plaintiff's protected activity."  Magluta v. U.S. Fed. Bur. of Prisons, 2009 WL

1504749, *3 (D. Colo. May 28, 2009).  With regard to the third element, "[a] plaintiff

9

must allege facts to show that retaliation was the animus behind the defendants'
actions, *i.e.,* a plaintiff must show that 'but for' a desire to retaliate, the defendants
would not have acted as they did." Id.

Defendants assert that the plaintiff's claim that defendants Newth, Peck, and
Abney ransacked and damaged his belongings, including legal material, in retaliation for
his statement that he would have to sue them for depriving him of his eye surgery fails.
They contend that plaintiff has no evidence demonstrating that defendants retaliated
against him because of his statements and that plaintiff has not demonstrated that the
defendants' actions would not have occurred "but-for" a retaliatory motive.  According to
the defendants, pursuant to policy, plaintiff's personal property was inventoried as a
result of his scheduled medical trip, and it was discovered that he was in violation of
policy as a result of his excess property.  He was provided with opportunities to dispose
of or mail his property out of the facility.  They assert that plaintiff is not exempt from
prison policy merely because he threatens to file a lawsuit.  They were simply enforcing
a CDOC policy, and plaintiff has no evidence demonstrating that he would not have
been otherwise required to comply with property limitations but for his statements or that
the limitations were enforced exclusively against him.  Finally, defendants assert,
plaintiff has failed to allege any sort of damage resulting from the alleged retaliation.

Defendants have provided to the court the applicable Administrative Regulation
("AR") concerning offender property which limits the amount of state and authorized
personal property to no more than three cubic feet plus a 2.0 cubic foot box for legal
papers, requires the inventory of such property when, as in this case, an offender is
going to be temporarily transported off facility grounds so that it can be stored during the

10

absence, and sets forth the procedure to be followed for disposition of excess property. (See AR 850-06, at Docket No. 85-1, p. 5-6).  With respect to legal papers, the AR specifically provides that "[i]n the interest of effective property management and fire safety concerns, facilities shall limit the amount of personal legal papers that an offender may maintain in his/her possession to a maximum of two cubic feet.  It is the offender's responsibility to determine what legal papers he/she will retain to comply with this restriction.  Excess legal material shall not be stored by any facility, nor shall other property be stored in this box."  (AR 850-06(IV)(E)(3)(a), found at Docket No. 85-1, p. 5).  The regulations further provides that "[a]ny property which does not fit into the storage limitations listed above will be deemed contraband and sent out at the offender's expense, or disposed of with a record maintained of the dispositions."  (AR 8500-06(IV)(E)(4)).

Defendants have shown that the CDOC undertook efforts to get plaintiff into compliance with property limitations long before his scheduled medical appointment, and such efforts continued well into 2009.  (See Docket Nos. 85-3, 85-4, 85-5).  When plaintiff's property was inventoried as required by the AR based on his scheduled medical trip, it was discovered that he had an excess amount, and certain contraband was confiscated.  (Docket No. 85-2).  Defendants correctly assert that the plaintiff has made no showing that but for a desire to retaliate, excess property would not have been confiscated and disposed of in accordance with the AR.  Therefore, summary judgment should enter for the defendants on this claim.

**Humphrey's Processing of Plaintiff's Grievances.**  Plaintiff contends that defendant Humphrey "deliberately fumbled grievance processing" and that starting in

11

May 2008, defendant Humphrey refused to process grievances for plaintiff.

Defendants assert that plaintiff has no evidence demonstrating that the grievance limitations deprived him of the ability to file a pleading with any court or caused him to miss a court-imposed deadline or that any delay in filing a document caused a case to be dismissed.  Furthermore, defendants contend that limiting access to the grievance system does not limit an inmate's access to the court system.

It is well established that "a prisoner claiming a denial of access to the courts must allege some actual injury in his ability to pursue a nonfrivolous legal claim." Creighton v. Denuzi, 2009 WL 3122950, at *2 (D. Colo. Sept. 24, 2009) (citing Lewis v. Casey, 518 U.S. 343, 349 (1996); Penrod v. Zavaras, 94 F.3d 1399, 1430 (10th Cir. 1996)).  See Peterson v. Shanks, 149 F.3d 1140, 1145 (10th Cir. 1998) ("To present a viable claim for denial of access to the courts . . . an inmate must allege and prove prejudice arising from the defendants' actions.").  Furthermore, "the right of access to the courts extends only as far as protecting an inmate's ability to prepare initial pleadings in a civil rights action regarding his or her current confinement or in an application for a writ of habeas corpus."  Creighton, 2009 WL 3122950, at *2.  Here, plaintiff has made no showing of any such actual injury as a result of the limitations placed on his usage of the grievance procedure.

Defendants have further shown that plaintiff's grievances were limited pursuant to the AR concerning grievances because of the number of frivolous grievances he had been filing.  AR 850-04(IV)(C) provides in pertinent part:

> 1.   Offenders who file multiple, frivolous grievances in a short
>      period of time may be served a warning letter . . . by the
>      administrative head, or designee.  It will warn them that they

12

are infringing on the rights of others to obtain timely
grievance responses.  When the offender continues to file
multiple, frivolous grievances the administrative head, or
designee, may implement restrictions 30 calendar days from
the date the warning letter was served on the offender.  The
administrative head, or designee, will serve the offender with
a "Notice of Grievance Restriction" . . . .  Forfeiture of the
offender's grievance privileges shall be imposed as follows:

a.      First Restriction: Offender will be allowed to file no
        more than one grievance, per calendar month, for a
        period of 60 calendar days.

b.      Second Restriction: Offender will be allowed to file no
        more than one grievance, per calendar month, for a
        period of 180 calendar days.

c.      Third Restriction: Offender will be allowed to file no
        more than one grievance, per calendar month, for a
        period of one year.

d.      Fourth Restriction: Offender will be allowed to file no
        more than one grievance, per calendar month,
        indefinitely.  The administrative head, or designee, is
        responsible to automatically review all such
        restrictions annually.

e.      Following the completion of each restriction period,
        offenders must be off restrictions for at least 30
        calendar days before the next level of restriction can
        be implemented.

(Docket No. 85-8 at 4).

As shown by Defendants' Exhibit I (Docket No. 85-9), on July 18, 2008, pursuant

to AR 850-04, plaintiff was given a Warning Letter Regarding the Filing of Frivolous

Grievances from Associate Warden Soares (which was served by Humphrey) in which

plaintiff was advised that he had filed 96 frivolous grievances within a 180-day period

and that he thus would be allowed to file no more than one grievance per calendar

month for a period of 60 calendar days.  Thereafter, on December 2, 2008, plaintiff was

13

advised in a Notice of Grievance Restriction from Associate Warden Soares (which was served by Humphrey) that after receiving the above-mentioned Warning Letter, plaintiff continued to file an additional 28 frivolous grievances in a 60-day period.  Therefore, pursuant to policy, he would be allowed to file no more than one grievance per calendar month for a period of 180 calendar days.   (Docket No. 85-10, Defs.' Ex. J). Nevertheless, plaintiff continued to file a large number of grievances, and on October 16, 2009, he was advised in another Notice of Grievance Restriction from Associate Warden Soares (which was served by Humphrey) that since June 15, 2009, when plaintiff's restriction was lifted, plaintiff had filed 43 more frivolous grievances within a 120-day period.  Therefore, pursuant to policy, he would be allowed to file no more than one grievance per calendar month for a period of one year.  (Docket No. 85-11, Defs.' Ex. K).

Defendants assert that plaintiff's access to the grievance procedure was appropriately restricted due to his abuse of the grievance procedure.  Defendants contend that here there is a legitimate penological interest in limiting access to the grievance system for those inmates who choose to abuse the system by filing excessive grievances.  They assert that limiting access prevents excessive and frivolous grievances, prevents harassment of CDOC employees and officials, and provides for an efficient system that affords all inmates the ability to file legitimate grievances. According to the defendants, failure to limit excessive grievances when an inmate abuses the system will limit access for other inmates and will be an inefficient use of CDOC staff and resources.  Defendants thus assert that the four-pronged test of <u>Turner v. Safley</u>, 482 U.S. 78 (1987), is satisfied here, and thus plaintiff's First Amendment

14

claim with respect to the grievance restriction should be dismissed.[3]  This court agrees

with defendants' arguments.   This court finds that "the limitations placed on plaintiff's

use of the prison's grievance procedures were justified and reasonable under the

circumstances and did not amount to a violation of plaintiff's First Amendment Rights."

Ayers v. Uphoff, 1 Fed. Appx. 851, 856 (10th Cir. Jan. 8, 2001).  See Cotner v.

Oklahoma, 2009 WL 4776274, at *12 (W.D. Okla. Dec. 11, 2009) ("Defendants'

imposition of grievance restriction filed by Plaintiff does not state a claim upon which

relief may be granted. . . .  Since there is no constitutional right to a grievance

procedure, it follows that a restriction on the number of grievances a prisoner can file

does not give rise to a cognizable constitutional rights claim.").  See also Ordaz v.

Lynaugh, 20 F.3d 1171 (5th Cir. 1994) (Even if prisoner had a liberty interest in his use

of the prison grievance procedures, "prison officials were still allowed to exercise

discretion to limit the non-good faith use of the grievance system without impermissible

intrusion on that liberty interest.").

---

[3]Under Turner, a regulation or policy that impinges on an inmate's constitutional
rights, including the right to access to the courts, is valid if it is "reasonably related to
legitimate penological interests."  Turner v. Safley, 482 U.S. at 89.  In making such a
determination, the court is guided by the following four factors.  Id. at 89-90, Jones v.
Salt Lake County, 503 F.3d 1147, 1153 (10th Cir. 2007).  "First, there must be a valid,
rational connection between the prison regulation and the legitimate governmental
interest put forward to justify it."  Turner, 482 U.S. at 89.   "A regulation restricting an
inmate's First Amendment rights must operate without regard to the content of the
expression."  Jones, 503 F.3d at 1152.  Second, the court considers "whether there are
alternative means of exercising the right that remain open to prison inmates."  Turner,
482 U.S. at 90.  Third, the court "examine[s] the impact accommodation of the asserted
constitutional right would have on guards, other inmates, and prison resources."  Jones,
503 F.3d at 1152.  "Finally, [the court] determine[s] whether obvious, easy alternatives
exist that fully accommodate inmates' rights at de minimis cost to valid penological
interests.  If so, the regulation may not be reasonable but an 'exaggerated response' to
prison concerns."  Id.

15

**WHEREFORE,** for the foregoing reasons it is hereby

**RECOMMENDED** that plaintiff's Motion for Court to Revisit the Complaint (Docket No. 82) be **denied**.  It is further

**RECOMMENDED** that the Defendants' Motion for Summary Judgment (Docket No. 85) be **GRANTED**.  It is thus further

**RECOMMENDED** that the plaintiff's Motion for Defendants to be Held Personally Accountable for Judgment When It is Rendered in the Plaintiff's Favor (Docket No. 83) be **denied as moot**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  October 4, 2011                         s/ Michael J. Watanabe
       Denver, Colorado                    Michael J. Watanabe
                                      United States Magistrate Judge